IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT K. GANT,

                Plaintiff,                OPINION AND ORDER

    v.

                                        12-cv-258-wmc

MICHAEL MEISNER, *et al.*,

                Defendants.

---

Plaintiff Robert K. Gant is an inmate incarcerated by the Wisconsin Department of Corrections. He was granted leave to proceed *in forma pauperis* with claims against five correctional officers, all of whom allegedly violated the Eighth Amendment by failing to protect Gant from self-harm on two separate occasions. Defendants have filed a joint motion for summary judgment, arguing that Gant cannot prevail on any of his claims. (Dkt. # 23). Gant has filed a response and requests court assistance in locating counsel to represent him in this case. (Dkt. # 47). For the reasons set forth below, the court will deny defendants' motion for summary judgment and grant Gant's request for counsel.

FACTS

At all times pertinent to the complaint, Gant has been in state custody at the Columbia Correctional Institution ("CCI") located in Portage, Wisconsin. Specifically, Gant was confined in an area of the prison known as "disciplinary separation 1" or DS-1.

Defendants Brian Neumeier, Jason Witterholt, Gregory Garrison, Jeremy Wiley and Travis Haag were employed at CCI and assigned to work in DS-1. Neumeier and

Witterhold were correctional officers assigned to 1st shift, which runs between 6:00 a.m. and 2:00 p.m. Wiley and Haag were correctional officers assigned to the 2nd shift, which starts at 2:00 p.m. Garrison typically worked during both 1st and 2nd shift from 7:45 a.m. until 3:45 p.m. as an escort officer for the mental health program.

Beginning at approximately 8:00 a.m. on the morning of December 5, 2011, Gant made repeated requests to see a psychologist, telling officers Neumeier, Witterholt and Garrison that he was suicidal and was probably going to overdose if he was not seen. Gant claims that the officers did nothing and ignored his requests for psychological care.

When another officer approached Gant's cell at the start of second shift (approximately 2:10 p.m.), Gant told him that he intended to kill himself and promptly ingested a large amount of pills that he had in his cell. Gant was treated in the Health Services Unit for a possible overdose of aspirin (Exedrin) and amitriptyline (Elavil), which is an antidepressant.[1] At 3:00 p.m., Gant was taken to a local hospital for evaluation and care. While there, Gant was seen by a physician, who treated Gant with 50 grams of "charcoal suspension." Gant returned to CCI at approximately 7:25 p.m. and was placed in observation status.

After the December 5th incident, Gant was placed on a "no medications in cell" restriction, which prevented him from stockpiling his own medication. Even so, Gant

---

[1] The available psychiatric records indicate that Gant has been diagnosed with antisocial personal disorder, attention deficit hyperactivity disorder, an impulse control disorder that is not otherwise specified, a learning disability and a dependence on hallucinogens that is in remission while he is in a controlled environment. (Dkts. # 17, # 27).

was reportedly able to obtain a large quantity of acetaminophen (Tylenol) from another inmate.[2]

On February 3, 2012, Gant reportedly informed Wiley and Haag that he was suicidal and "really needed to speak with his grandmother or he would attempt suicide by ingesting a very large number of pills." Gant claims that both officers taunted him and "indicated they did not care if he overdosed." At approximately 7:50 p.m. on February 3, 2012, Gant ingested over 100 pills of Tylenol that were in his cell. He refused medical treatment and became agitated, requiring officers to place him in a "spit mask." He was taken to the local hospital for further evaluation and treatment for high levels of acetaminophen in his system. At 3:50 a.m. on February 5, 2012, Gant returned to CCI and was placed in observation status.

Gant contends that, on both December 5, 2011, and February 3, 2012, defendants were aware of a substantial risk of harm to his health and safety, but failed to take steps to abate that risk in violation of the Eighth Amendment. Gant seeks injunctive relief in the form of a protocol to ensure that inmates are unable to procure medication from other inmates. He also seeks compensatory damages in the amount of $200,000.00 and punitive damages in the amount of $100,000.00 from each defendant.

---

[2] Gant does not indicate how he obtained the Tylenol that he used to overdose, but explains that there are at least three ways for inmates to pass pills to each other while in DS-1: (1) at recreation; (2) by leaving them in the shower stall; or (3) by leaving them in the law library.

OPINION

The purpose of summary judgment is to determine whether the parties have gathered and can present enough evidence to support a jury verdict in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001). Summary judgment is appropriate if there are no genuinely disputed material facts, and if on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The applicable substantive law will dictate which facts are material. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). A factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Roger Whitmore's Auto. Serv., Inc. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005).

In determining whether a genuine issue of material fact exists, the court must construe all facts in favor of plaintiff, as the nonmoving party. *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). Even so, plaintiff may not simply rest on the allegations in his complaint; rather, he must respond by presenting specific facts that would support a jury's verdict in his favor on his claims. *Hunter v. Amin*, 583 F.3d 486, 489 (7th Cir. 2009); *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005). Plaintiff has at least met this low threshold.

I. Eighth Amendment — Failure to Prevent Self-Harm

Gant claims that the defendants violated his Eighth Amendment rights by deliberately ignoring the serious risk that he would attempt suicide or engage in serious self-harm on two separate occasions (December 5, 2011, and February 3, 2012). The Eighth Amendment, which prohibits "punishment" that is "cruel and unusual," imposes a duty on prison officials to provide "humane conditions of confinement" by ensuring that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials also must ensure that "reasonable measures" are taken to guarantee inmate safety and prevent harm. *Id*.

Suicide, attempted suicide and other acts of self-harm clearly pose a "serious" risk to an inmate's health and safety. *See Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001)). Therefore, prison officials have a duty to protect prisoners from harming themselves. *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010); *Cavalieri v. Shepard*, 321 F.3d 616 (7th Cir. 2003); *see also Rice ex. Rel. Rice v. Correctional Medical Servs.*, 675 F.3d 650, 665 (7th Cir. 2012) ("[P]rison officials have an obligation to intervene when they know a prisoner suffers from self-destructive tendencies."). In this context, a prison official violates that duty if he (1) is "cognizant of the significant likelihood that an inmate may imminently seek to take his own life"; and (2) acts with "deliberate indifference" by intentionally disregarding that risk. *Collins,* 462 F.3d at 761 (internal citation omitted); *see also Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) (defendant must be aware of the significant likelihood that an inmate may imminently seek to take

5

his own life and must fail to take reasonable steps to prevent the inmate from performing the act).

As outlined above, Gant claims that he alerted each of the named defendants that he needed assistance and that he intended to commit suicide by overdosing on pills. None of the defendants, however, are able to recall Gant requesting help or expressing suicidal thoughts on December 5, 2011, or February 3, 2012. Thus, defendants deny ignoring or acting with deliberate indifference to a serious threat to Gant's health or safety on the date in question. Defendants also point out that there is no corroborating evidence of Gant's claim that he expressed a desire to harm himself before actually doing so on December 5, 2011, or on February 3, 2012. In particular, defendants note that all mental health issues reported by inmates are "normally recorded in the DS1 unit log by the officer working in the control bubble once the concern is reported to him/her." Contemporaneous log records kept by the defendants contain no entry of Gant voicing a request for help before attempting suicide on December 5, 2011, or February 3, 2012.

Defendants note further that Gant has failed to comply fully with the court's procedures. In particular, he did not respond to defendants' proposed findings of fact. Under these circumstances, the facts proposed by defendants are undisputed to the extent that they are supported by admissible evidence. *See Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994); *Strong v. Wisconsin*, 544 F. Supp. 2d 748, 759-60 (W.D. Wis. 2008). Defendants maintain that the court cannot consider any evidence presented by Gant unless it is in a proposed finding of fact. Because he has not filed proposed findings of fact, defendants contend that they are entitled to prevail.

In addressing any *pro se* litigant's pleadings, however, the court must read the allegations generously, reviewing them under "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 521 (1972); FED. R. CIV. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"). Although Gant has not presented proposed findings of fact, he has filed a response to the motion for summary judgment. Along with that response, Gant has provided sworn statements from several inmate witnesses.[3] Pleadings filed by a *pro se* litigant are entitled to a liberal construction, including all reasonable inferences that can be drawn from them. *See Haines*, 404 U.S. at 521.

In his own statement, Gant maintains that he advised Neumaier, Witterholt and Garrison that he was suicidal and needed to see a psychologist on December 5, 2011, but that his requests for help were ignored. (Dkt. # 39). In support, Gant presents sworn statements from at least three other inmates assigned to DS-1 (Rodney James Redmond, Carl Barrett and James Turner), all of whom swear to have overheard Gant tell Witterholt that he was feeling suicidal and needed a psychologist at approximately 1:20 p.m. on December 5, 2011. (Dkts. # 35, # 36, # 37). According to Redmond, Witterholt did not notify the Psychological Services Unit, but instead contacted Officer Garrison. When Garrison arrived at Gant's cell at 1:30 p.m., Gant told Garrison that he was going to hurt himself. Both Garrison and Witterholt left at the end of their shift without doing anything to help Gant, who attempted suicide shortly thereafter. While

---

[3] In addition to his own statement, Gant provides four others that are made under penalty of perjury pursuant to 28 U.S.C. § 1746. (Dkts. # 35, # 36, # 38, # 39, # 40).

there may be foundation objections to some of this testimony, the admissible portion is sufficient to raise a fact issue about whether Neumaier, Witterholt and Garrison were aware that Gant was suicidal, but failed to enter his request in the log or take any other reasonable measures to protect him from self-harm on December 5, 2011.

Gant also maintains that he advised Wiley and Haag that he was suicidal and that he intended to overdose on the Tylenol he had in his cell on February 3, 2012. (Dkt. # 39). In support, Gant again provides sworn declarations from two other inmates assigned to DS-1 (Christopher Goodvine and Quenton Thompson, Sr.), who claim to have overheard Gant tell Wiley and Haag that he was suicidal and intended to overdose. (Dkts. # 38, # 40). This, too, is sufficient to raise a fact issue about whether Wiley and Haag were aware that Gant was suicidal but failed to take reasonable measures to protect him from self-harm on February 3, 2012. Accordingly, defendants motion for summary judgment must be denied.

## II. Gant's Request for Counsel

Gant has also made a request for court assistance in recruiting counsel to assist him with this case going forward. (Dkts. # 16, # 47). To date, Gant has represented himself capably and his efforts have been sufficient to survive summary judgment. Given the evidence that Gant suffers from mental illness and a learning disability, as well as other limitations inherent with his status as an indigent inmate, the court nevertheless concludes that this case meets the criteria for recruiting volunteer counsel, particularly now that his case will proceed to trial. *See Garner v. Sumnicht*, — F. App'x —, 2014 WL

278493 (7th Cir. Jan. 27, 2014). To that end, the court will grant plaintiff's request to recruit counsel to represent him through the end of this matter.

Plaintiff is advised that it may take time to locate an attorney who is willing to represent him on a *pro bono* basis. Once counsel has been recruited and a notice of appearance has been entered designating an attorney of record for plaintiff, the court will schedule a status conference in this case. Further proceedings in this case will be stayed until that time.

## ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants in (dkt. # 24) is DENIED.

2. The request for recruitment of legal counsel by plaintiff (dkt. # 47) is GRANTED.

3. Once counsel has been recruited and a notice of appearance has been entered designating an attorney of record for plaintiff, the court will schedule a status conference in this case. Further proceedings in this case will be STAYED until such time.

Entered this 25th day of February, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge